UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TOUSSAINT DAVIS,

                        Plaintiff,

                                                                9:10-CV-0081
v.                                                               (DNH/GHL)

TIMOTHY H. COWIN,

                        Defendant.
_____

APPEARANCES:                                             OF COUNSEL:

TOUSSAINT DAVIS
Plaintiff *pro se*
Onondaga County Correctional Facility
P.O. Box 143
Jamesville, New York 13078

ONONDAGA COUNTY DEPARTMENT OF LAW     CAROL L. RHINEHART, ESQ.
Counsel for Defendant
John H. Mulroy Civic Center
421 Montgomery Street
10th Floor
Syracuse, New York 13202

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

      This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Toussaint Davis claims that Defendant Timothy H. Cowin violated his constitutional rights by placing him in administrative segregation and placing restrictions on his visitors, activities, and movement. (Dkt. No. 1.) Currently pending before the Court is Defendant's motion for summary judgment

pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 17.) For the reasons discussed below, I recommend that the motion be granted.

I.      FACTUAL AND PROCEDURAL SUMMARY

Plaintiff has been confined at Onondaga County Correctional Facility in Jamesville, New York, since July 28, 2009. (Dkt. No. 1 at 1, 4.) Plaintiff was admitted to the facility as a pretrial detainee after being indicted in this Court for conspiracy to interfere with interstate commerce by robbery, interference with interstate commerce by robbery, and murder as a result of the possession and discharge of a firearm in furtherance of a crime of violence. *United States v. Pegese*, No. 5:09-CR-390 (NAM), Dkt. No. 1. The murder victim was a Town of New Hartford police officer. *Id*. at 8.

Upon being admitted to the facility, Plaintiff was placed in administrative segregation. (Dkt. No. 1 at 4.) Other sanctions were also imposed on Plaintiff. *Id*. Specifically, he was placed in leather restraints and escorted by two officers whenever he moved from his cell to another location, he was required to wear leather restraints during exercise, he was not allowed to attend religious services, and he was not allowed any contact visits. *Id*. Plaintiff alleges that Defendant Timothy H. Cowin placed these restrictions on him arbitrarily and capriciously "for no reasons, without [Plaintiff] violating any institutional rules." *Id*. at 5.

On August 11, 2009, an administrative hearing was held regarding Plaintiff's placement in administrative segregation. (Dkt. No. 17-2 at 3.) Plaintiff was not allowed to attend, "respond to the allegations orally," or to present evidence or witnesses at the hearing. *Id*. After that hearing, Defendant determined that Plaintiff should remain in administrative segregation because of the nature of his crime. (Dkt. No. 17-2 at 3.)

Plaintiff wrote two letters to "Timothy Cowin, requesting that my civil rights be restored." (Dkt. No. 1 at 2.) One was titled "Administrative Segregation Override" and one was titled "Notice of Appeal of Administrative Segregation Hearing." (Dkt. No. 19 at 13-15.) Plaintiff did not receive a response. (Dkt. No. 1 at 2.)

On August 28, 2009, Plaintiff commenced an Article 78 proceeding against Defendant Cowin in Onondaga County Supreme Court. (Dkt. No. 17-2.) Plaintiff alleged that Defendant placed him in administrative segregation "for no apparent reasons" in violation of Directive 3035. (Dkt. No. 17-2 at 3.) He alleged that the administrative segregation placement and the restrictions imposed on him had deprived him of meaningful access to the courts, access to religious services, meaningful exercise, and regular movement. *Id*. at 5-6. Plaintiff asked that the administrative segregation decision be vacated and that Defendant be directed to release Plaintiff from administrative segregation, restore contact visits for attorneys and family, remove leather restraints from Plaintiff during exercise, and allow Plaintiff to attend religious services. *Id*. at 7.

On October 15, 2009, Acting Justice of the Supreme Court John Brunetti issued a decision denying Plaintiff's petition as to his administrative segregation status and the limitations on his contact visits and religious exercise, but requesting more information from Defendant regarding the need to physically restrain Plaintiff in the outdoor exercise area. (Dkt. No. 17-3.)

On October 30, 2009, Justice Brunetti granted Plaintiff's petition "to the extent that [Defendant's] determination to impose physical restraints during periods of exercise is annulled." (Dkt. No. 17-4 at 3.) He dismissed Plaintiff's claims regarding legal visits "on condition that [Defendant] allow the passage of documents between [Plaintiff] and his counsel, and that a

3

corrections officer or other staff person assist in the passage of such documents." *Id*. at 4. He dismissed all of Plaintiff's other claims. *Id*. Plaintiff did not appeal Justice Brunetti's decision. (Dkt. No. 17-8 ¶ 17; Dkt. No. 19 at 2.)

Plaintiff filed this action on January 22, 2010. (Dkt. No. 1.) Plaintiff alleges that Defendant violated his Sixth Amendment right to counsel and access to the courts, his First Amendment right to freely exercise his religion, his right to due process, and his right to equal protection. (Dkt. No. 1 at 5.) Plaintiff requests injunctive relief but does not request damages. *Id*. at 6. Specifically, he asks this Court to set aside the administrative segregation determination of July 28, 2009, to prohibit Defendant from continuing to hold Plaintiff in administrative segregation, and to direct Defendant to allow Plaintiff contact visits with his attorney and his family, to remove the leather restraints during exercise and movement, and to permit Plaintiff to attend religious services. *Id.*

Defendant now moves for summary judgment, arguing that Plaintiff's action should be dismissed because (1) Plaintiff failed to exhaust his administrative remedies before filing suit; (2) it is barred by the *Rooker-Feldman* doctrine; (3) it is barred by the doctrine of res judicata, or claim preclusion; and (4) it is barred by the doctrine of collateral estoppel, or issue preclusion. (Dkt. No. 17-9.) Plaintiff has opposed the motion. (Dkt. No. 19.) Defendant has not filed a reply. For the reasons discussed below, I find that Plaintiff's action is not barred by the exhaustion requirement of the Prison Litigation Reform Act or by the *Rooker-Feldman* doctrine, but that it is barred by the doctrine of res judicata.

II.   **LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT**

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the

4

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).

**III.    ANALYSIS**

    **A.    Exhaustion of Administrative Remedies**

Defendant argues that the Court should dismiss Plaintiff's complaint because Plaintiff failed to exhaust his administrative remedies before commencing this action. (Dkt. No. 17-9 at 6-8.) I find that Defendant is not entitled to summary judgment on this basis.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with

---

[1] A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement applies to pretrial detainees as well as to sentenced prisoners. *United States v. Al-Marri*, 239 F. Supp. 2d 366, 367 n.1 (S.D.N.Y. 2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007). If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81 (2006).

    The Onondaga County Department of Correction has written procedures and regulations for handling inmates' grievances. (Dkt. Nos. 17-6 and 17-7.) Defendant asserts that Plaintiff failed to exhaust his administrative remedies because he did not use those procedures. (Dkt. No. 17-9 at 7.) Specifically, Defendant argues that Plaintiff should have attempted to informally resolve the issue and then, if not satisfied, submitted an Inmate Grievance Form to the Grievance Coordinator. *Id*. However, as Plaintiff correctly notes, the Onondaga County Department of Correction's Inmate Handbook explicitly states that "[d]ispositions and sanctions resulting from . . . administrative segregation housing decisions shall not be the subject of a grievance . . . Formal grievances written on such matters will be returned to the inmate." (Dkt. No. 19 at 5; Dkt. No. 17-7 at 27.) Rather, complaints about such decisions "will be dealt with through the disciplinary system." (Dkt. No. 17-7 at 27.) The Inmate Handbook's section regarding the Inmate Discipline Code states that "[a]ppeal forms are issued as part of the Disciplinary Hearing process. Completed appeal forms are to be given to the housing unit sergeant, who will forward them

through the chain-of-command to the Commissioner of Correction." *Id*. at 23.  Plaintiff sent two letters to Defendant, who is the Commissioner of Correction.  One was titled "Administrative Segregation Override" and one was titled "Notice of Appeal of Administrative Segregation Hearing."  (Dkt. No. 19 at 13-15.)  Defendant does not argue that these letters were insufficient because they were not submitted on appeal forms issued as part of the hearing process.  Indeed, Defendant's motion does not address the Disciplinary Hearing process or Plaintiff's letters to Defendant at all.  Moreover, Defendant did not file a reply responding to Plaintiff's assertion that he correctly followed procedures by pursuing the Disciplinary Hearing process.  Therefore, I recommend that the Court find that Defendant is not entitled to summary judgment on this basis.

      B.     *Rooker-Feldman*

Defendant, citing the *Rooker-Feldman* doctrine as described in *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195 (2d Cir. 1996), argues that the Court lacks jurisdiction over Plaintiff's case.  (Dkt. No. 17-9 at 3.)  Defendant's argument relies on an outdated interpretation of the *Rooker-Feldman* doctrine and is without merit.

The *Rooker-Feldman* doctrine flows from 28 U.S.C. § 1257, which states that in the federal system only the United States Supreme Court has the jurisdiction to review state-court decisions.  Until 2005, the Second Circuit applied *Rooker-Feldman* broadly.  *See Moccio* , 95 F.3d at 199.  The effect of the Second Circuit's broad approach was to divest federal courts of jurisdiction in a wide array of cases.

In 2005, the United States Supreme Court reviewed the way that lower federal courts were applying the *Rooker-Feldman* doctrine.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005).  The Court criticized courts like the Second Circuit that had applied

7

*Rooker-Feldman* expansively.  The Court clarified that the doctrine should be applied narrowly[2] and should be "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil*, 544 U.S. at 284.  Only in such cases is a lower federal court divested of subject-matter jurisdiction.

After *Exxon Mobil*, the Second Circuit instituted a new four-part test to determine whether the *Rooker-Feldman* doctrine divests a court of subject matter jurisdiction: (1) the federal court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the plaintiff invites district court review and rejection of the state court judgment; and (4) the state court judgment was rendered before the district court proceedings commenced.  *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005); *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009).

Here, Plaintiff does not complain of injuries caused by the state court judgment.  Rather, he complains of injuries caused by Defendant's decision to place him in administrative segregation without privileges.  *See Hoblock*, 422 F.3d at 88 ("The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment."); *Sindone v. Kelly*, 439 F. Supp. 2d 268, 274 (S.D.N.Y. 2006) ("the Appellate Division decision did not 'cause' or 'produce' the injury for which [the plaintiff] seeks relief . . . because the state court itself did not

---

[2]  After *Exxon Mobil*, the Second Circuit noted that the narrowness of the *Rooker-Feldman* doctrine's applicability "is evidenced by the fact that the Supreme Court has only applied the doctrine twice - in the two cases after which the doctrine was named."  *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007).

take the initial action . . . Rather, the state court judgment merely 'ratified, acquiesced in, or left unpunished' the decision of [the defendant]."). Thus, the *Rooker-Feldman* doctrine does not divest this Court of jurisdiction to consider Plaintiff's complaint.

### C. Res Judicata

Defendant argues that Plaintiff's action is barred by the doctrine of res judicata, or claim preclusion.[3] (Dkt. No. 17-9 at 3-4.) Defendant is correct.

The doctrine of res judicata bars a subsequent legal proceeding where (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiff or someone in privity with the plaintiff; and (3) the claims asserted in the second legal proceeding were, or could have been, raised in the prior action. *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286-87 (2d Cir. 2002); *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). However, "res judicata does not bar subsequent litigation when the court in the prior action could not have awarded the relief requested in the new action." *Marvel Characters, Inc.*, 310 F.3d at 287. Thus, where a plaintiff is unsuccessful in an Article 78 proceeding and later brings a federal civil rights lawsuit for damages, the case is not barred by the doctrine of res judicata because damages are not available in Article 78 proceedings. *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004). However, where the plaintiff seeks only injunctive relief in federal court, res judicata bars the suit because the Article 78 proceedings could have provided all of the relief sought. *Johns v. Rampe*, 333 Fed. App'x 644, 646 (2d Cir. 2009).

---

[3] Because *Rooker-Feldman* does not apply to this case, the Court has jurisdiction to determine whether "the defendant prevails under principles of preclusion." *Exxon Mobil*, 544 U.S. at 293. If *Rooker-Feldman* applied, this Court would not be able to exercise jurisdiction to apply the principles of claim and issue preclusion to the case.

Here, the first two prongs of the res judicata inquiry are essentially uncontested. The Onondaga County Supreme Court entered judgment on the merits of Plaintiff's claims. (Dkt. No. 17-4.) Plaintiff and Defendant were both parties to that proceeding. *Id.*

Regarding the third prong, Plaintiff argues that the claims he asserts here were not and could not have been decided in the Article 78 proceeding because the federal "complaint alleges violations of constitutional rights of the 1st, 5th, 6th, and 14th Amendment, which the state court complaint did not allege. These violations are purely Federal in nature which deals with the Constitution of the Federal Government." (Dkt. No. 19 at 2.) However, that argument is without merit for two reasons. First, the relevant inquiry for res judicata purposes is not simply whether the plaintiff raised the issues in the prior proceeding. The relevant inquiry is whether the claims were, *or could have been*, raised in the prior action. Federal constitutional issues can be decided in Article 78 proceedings. *See, e.g.*, *Borum v. Vill. of Hempstead*, 590 F. Supp. 2d 376, 379 (E.D.N.Y. 2008) (noting that justice presiding over Article 78 proceeding analyzed federal constitutional claims); *Collard v. Inc. Vill. of Flower Hill*, 759 F.2d 205, 207 (2d Cir. 1985) ("the constitutional claims that form the gravamen of the district court action could have been brought in the earlier (Article 78) proceeding."). Second, although Plaintiff asserts that he did not make federal claims in the Article 78 proceeding, the state court did, in fact, consider Plaintiff's claims under federal law. In his decision, Justice Brunetti cited federal constitutional law in the sections of his decision regarding Plaintiff's placement in administrative segregation, contact visits with his attorney, and lack of access to religious services. (Dkt. No. 17-3 at 20-27.)

Finally, although Plaintiff could have avoided the application of res judicata by requesting monetary relief, the complaint does not seek money damages. (Dkt. No. 1 at 6.)

Thus, his claims are barred by the doctrine of res judicata. Therefore, I recommend that the Court grant Defendant's motion for summary judgment.[4]

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 17) be **<u>GRANTED</u>**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: August 12, 2011
       Syracuse, New York

*[signature]*
George H. Lowe
United States Magistrate Judge

---

[4] Because I find that Plaintiff's action is barred by the doctrine of res judicata, I decline to address Defendant's argument regarding collateral estoppel.